IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLARENCE ROBERSON,

                Petitioner,

        vs.

TIM VIRGA, Warden, California State
Prison, Sacramento,

                Respondent.

No. 2:11-cv-00386-JKS

MEMORANDUM DECISION

Clarence Roberson, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Roberson is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Sacramento.  Respondent has answered, and Roberson has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial, in November 2008 Roberson was convicted in the Sacramento County Superior Court of assault by force likely to produce great bodily injury (Cal. Penal Code § 4501), with two prior strike convictions (Cal. Penal Code § 667(b)-(i)).  The trial court sentenced Roberson to an indeterminate prison term of twenty-five years to life.  The California Court of Appeal affirmed Roberson's conviction and sentence in an unpublished decision,[1] and the California Supreme Court denied review on October 27, 2010.  Roberson timely filed his Petition dated November 16, 2010, in this Court on February 11, 2011.

---

[1] *People v. Roberson*, No. C060546, 2010 WL 2806257 (Cal. Ct. App. July 19, 2010).

The factual underpinning of Roberson's conviction as recited by the California Court of

Appeal:

> About 1:30 p.m. on January 7, 2006, California State Prison Correctional Officer Juan Cantu saw, from 30 yards away, two inmates, David Sarente and defendant, push another inmate, Michael Rhinehart, to the ground and kick him. The kicks were to the upper torso and head. Rhinehart appeared to be unconscious. Officer Cantu ordered Sarente and defendant to stop and to move away from Rhinehart.
>
> Correctional Officer Michael Key also witnessed the assault. Officer Key's attention was drawn to the area when, 10 to 15 yards away, several inmates quickly dispersed. Officer Key saw Rhinehart's motionless body on the ground. Defendant and Sarente were kicking Rhinehart above the waist. All inmates were ordered to get down on the ground.
>
> Correctional Officer Alice Link-Lopez responded to the area and saw a group of inmates on the ground. Rhinehart was bleeding from his mouth and was unresponsive, appearing to be unconscious. Rhinehart was transported on a gurney to the medical clinic, where he regained consciousness. He was slightly confused and disoriented. He suffered lacerations on his lip and chin and received stitches to his lip. He also had abrasions on his neck and arm.
>
> At trial, Rhinehart was called by the defense to testify. He was in prison for murder. He claimed that he and [Roberson] had been friendly. Rhinehart grew up with Sarente's father. Rhinehart claimed that on the day of the incident, he threatened to stab [Roberson]. When they approached one another, Rhinehart landed on the ground. Rhinehart denied that either [Roberson] or Sarente knocked him down. Rhinehart denied that he had been knocked out or kicked. He claimed he was on the ground with his eyes closed and was resting. He denied that [Roberson] was at fault. Rhinehart acknowledged that [Roberson] may have punched him. Rhinehart would not "testify to that in court."
>
> Sarente testified and denied having been involved in the incident. Sarente denied seeing [Roberson] kick Rhinehart.
>
> [Roberson] testified. He claimed that Rhinehart called him over and threw two punches. [Roberson] blocked the second punch and then punched Rhinehart in the mouth, causing Rhinehart to fall backwards to the ground. [Roberson] denied that he or Sarente kicked Rhinehart.
>
> Defense investigator Andrew Saucedo was called to testify in rebuttal. He interviewed Rhinehart on June 13, 2008. Rhinehart claimed that he had been hit from behind and did not know who had knocked him out. Rhinehart also claimed he had been kicked but did not know who had kicked him.

A district attorney investigator also interviewed Rhinehart. Rhinehart stated that inmates will not testify against each other after a fight.[2]

## II.  GROUNDS RAISED/DEFENSES

In his Amended Petition, Roberson raises four grounds:  (1) the trial court failed to exercise its independent judgment; (2) there is insufficient evidence to support the conviction; (3) the trial court improperly denied a motion for a new trial in refusing to re-weigh the evidence; and (4) the trial court failed to investigate Roberson's competence.  Respondent does not assert any affirmative defenses.[3]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

_____

[2] *Id.* at *1-2.

[3] *See* Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412 (alteration added).

power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[8]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[9]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[11]  Because state court judgments of

---

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

4

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

> The Supreme Court recently underscored the magnitude of the deference required: As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[13]

In applying this standard, this Court reviews the "last reasoned decision" by the state

court.[14]  State appellate court decisions that summarily affirm a lower court's opinion without

explanation are presumed to have adopted the reasoning of the lower court.[15]  This Court gives

---

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

[15] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state
(continued...)

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[16]

## IV.  DISCUSSION

Ground 1:  Failure to Exercise Independent Judgment; Ground 2:  Insufficient Evidence;
Ground 3:  Denial of Motion for a New Trial

Although stated as separate grounds, all three grounds are based upon a common set of

facts and arguments:  insufficiency of the evidence.  Roberson presented these grounds in slightly

different form to the California Court of Appeal.  The California Court of Appeal rejected

Roberson's arguments presented to it, holding:

> **DISCUSSION**
> **I**
> [Roberson] contends the trial court erroneously denied his new trial motion,
> violating his right to due process.  He claims that the trial court applied the wrong
> standard and that the verdict was contrary to the evidence.  We reject [Roberson's]
> contention.
>
> Under section 1181, subdivision (6), a court may grant a new trial "[w]hen
> the verdict or finding is contrary to law or evidence . . . ."  "In ruling on a motion for
> a new trial based on the assertion that the verdict is contrary to the law or evidence,
> the trial judge must independently reweigh the evidence."  (*People v. McClellan*
> (1980) 107 Cal.App.3d 297, 301.)  The trial court, in considering a new trial motion,
> "'should consider the probative force of the evidence and satisfy itself that the
> evidence as a whole is sufficient to sustain the verdict . . . .  This does not mean,
> however, that the court should disregard the verdict . . . but instead that it should
> consider the proper weight to be accorded to the evidence and then decide whether
> or not, in its opinion, there is sufficient credible evidence to support the verdict . . . .'
> [Citation.]"  (*People v. Taylor* (1993) 19 Cal.App.4th 836, 843.)  On appeal, we must
> determine whether the trial court abused its discretion.  (*People v. Davis* (1995) 10
> Cal.4th 463, 524.)

---

[15](...continued)
court explaining the state court's reasoning.").

[16] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition
was not entitled to § 2254(d) deference).

[Roberson] filed a motion for a new trial, arguing that the verdict was contrary to the law or the weight of the evidence. He argued that the testimony of the prison guards was "ambiguous or lacking in critical respects." He asserted that Officer Cantu could not see [Roberson's] feet and only inferred that [Roberson] was kicking the victim. [Roberson] claimed the offense was at most a simple assault.

In opposition, the prosecutor argued that [Roberson's] motion lacked merit and that the jury had rejected [Roberson's] self-defense theory. The prosecutor asserted that the officers' testimony clearly established that [Roberson] had kicked the victim at least once and that Officer Cantu saw [Roberson] kick the victim in the face. The medical officer's testimony established that the victim had received stitches for his facial lacerations and that he had been unconscious and disoriented.

The prosecutor claimed that [Roberson] failed to meet his burden and that a request for a new trial is looked upon with disfavor. Citing several cases, the prosecutor claimed that an abuse of discretion standard applies to a new trial motion but also claimed "the standard is, from the evidence, including reasonable inferences, is there substantial evidence of the existence of each element beyond a reasonable doubt."

The prosecutor then set forth the law on new trial motions, noting that the court was not bound by the jury's resolution of conflicts in the evidence or inferences, was required to independently weigh the evidence, and while not disregarding the verdict, was required to satisfy itself that the evidence was sufficient to support the jury's verdict.

At the hearing, defense counsel argued that [Roberson] had used his fist, at most, to strike Rhinehart, making the offense a misdemeanor battery. The court commented that the officers' testimony showed [Roberson] had kicked Rhinehart, not punched him. Defense counsel claimed Rhinehart's physical injuries were not consistent with being kicked, noting that he had no "bruises, marks, [or] broken bones" and there was no blood on the shoes or pants of either [Roberson] or Sarente.

The prosecutor stated that [Roberson's] first trial resulted in a mistrial and the jury had been instructed on self-defense as well as the lesser offense. The prosecutor noted that during the same trial, Sarente was convicted of the lesser offense, a misdemeanor assault (§ 240), but the jury had likewise rejected Sarente's claim of self-defense and defense of others.

The prosecutor claimed that Officer Key had seen kicking to the torso, but his vision had been blocked by [Roberson] and he had not noticed the incident until Rhinehart was already on the ground, while Officer Cantu had seen [Roberson] and Sarente push Rhinehart to the ground and [Roberson] then kick Rhinehart in the facial area. The prosecutor argued that felony force had been used because Rhinehart had been knocked unconscious, went to the hospital, and had received stitches.

Defense counsel commented that had the offense occurred on the street, the prosecutor would have charged a misdemeanor assault. The court rejected defense counsel's claim that the conduct of either punching or kicking a person to unconsciousness would normally be a misdemeanor.

The trial court than stated: "The jury may have decided another way and then found that like they did with Mr. Sarente, but the jury at least in this case hearing what we all heard reached a verdict that I do think was supported by the evidence. Whether I might have reached the same verdict, whether you might have, whether another jury might have is really irrelevant. What I need to consider is whether the verdict that they did reach was contrary to law or fact, and I don't feel that it was based on what I heard and what the jury heard. I think that their verdict was supported by the evidence. As for the reasons stated by the People's opposition as well as argument, and I think reasons that are clear within the transcript of the proceedings. The jury has the right to credit the testimony of some witnesses, and in this case they obviously credited the testimony of the correctional officers and to discredit the witness of others. And, again, apparently in this case, they chose to do just that. And it's well within the province of the jury to make these decisions. And, again, whether or not others might agree or disagree, the fact that they chose to credit some witnesses and discredit others really is not in my mind a sound basis for invalidating their verdict.

"So the motion for a new trial is denied. I respectfully disagree with the argument that the verdict was not supported by the facts or the law. To the extent that I have discretion to reduce the charge after the verdict, and I agree that I do, I decline to do so. So the verdict will stand."

[Roberson] was charged with assault by means of force likely to produce great bodily injury. Actual injury is not required, but injuries are relevant considerations. (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1087.) The question for the jury was whether the force used was "of such a nature or degree that the probable result of its application will be the infliction of great bodily injury." (*People v. Covino* (1980) 100 Cal.App.3d 660, 668.) A single blow to the face with the use of a hand or fist may constitute assault by means of force likely to produce great bodily injury. (*In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161-1162.) And the use of feet usually constitutes assault with force likely to produce great bodily injury. (*People v. Duke* (1985) 174 Cal.App.3d 296, 302-303.)

Here, there was evidence that [Roberson] kicked Rhinehart in the head area. Rhinehart was knocked unconscious and required stitches for a split lip. Rhinehart's injuries are not insignificant or trivial, but instead are significant or substantial enough to constitute great bodily injury. (*People v. Escobar* (1992) 3 Cal.4th 740, 750, 752; *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.) Sufficient credible evidence supported the jury's verdict.

The court denied [Roberson's] new trial motion after weighing the evidence independently, stating that the jury's verdict was supported by the evidence and that the court disagreed with the argument that it was simply misdemeanor conduct, citing the district attorney's arguments. We conclude that the trial court did not abuse its discretion in denying [Roberson's] new trial motion. [Roberson] did not suffer a due process violation.

8

**II**

[Roberson] next contends that the court erroneously denied his motion for acquittal. We reject [Roberson's] contention.

At the conclusion of the prosecution's case-in-chief, [Roberson] moved for acquittal (§ 1118.1) on the ground that there was insufficient evidence of force likely to produce great bodily injury. In denying the motion, the court noted that a correctional officer testified there had been kicks to the head area.

"'The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged."' [Citation.] 'The purpose of a motion under section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case.' [Citations.] The question 'is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination.' [Citation.] The sufficiency of the evidence is tested at the point the motion is made. [Citations.] The question is one of law, subject to independent review." (*People v. Stevens* (2007) 41 Cal.4th 182, 200.)

Sufficient evidence was presented for the jury to determine whether [Roberson] committed the offense. As the trial court noted, a correctional officer testified there had been kicks to the head area. The trial court did not err in denying [Roberson's] motion for acquittal. [Roberson] did not suffer a due process violation due to the trial court's ruling.

At trial, Rhinehart was called by the defense to testify. He was in prison for murder. He claimed that he and [Roberson] had been friendly. Rhinehart grew up with Sarente's father. Rhinehart claimed that on the day of the incident, he threatened to stab [Roberson]. When they approached one another, Rhinehart landed on the ground. Rhinehart denied that either [Roberson] or Sarente knocked him down. Rhinehart denied that he had been knocked out or kicked. He claimed he was on the ground with his eyes closed and was resting. He denied that [Roberson] was at fault. Rhinehart acknowledged that [Roberson] may have punched him. Rhinehart would not "testify to that in court."

Sarente testified and denied having been involved in the incident. Sarente denied seeing [Roberson] kick Rhinehart.

[Roberson] testified. He claimed that Rhinehart called him over and threw two punches. [Roberson] blocked the second punch and then punched Rhinehart in the mouth, causing Rhinehart to fall backwards to the ground. [Roberson] denied that he or Sarente kicked Rhinehart.

Defense investigator Andrew Saucedo was called to testify in rebuttal. He interviewed Rhinehart on June 13, 2008. Rhinehart claimed that he had been hit from behind and did not know who had knocked him out. Rhinehart also claimed he had been kicked but did not know who had kicked him.

A district attorney investigator also interviewed Rhinehart.  Rhinehart stated that inmates will not testify against each other after a fight.[17]

1.  *Sufficiency of the Evidence*

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[18]  This Court must, therefore, determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[19]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[20]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[21]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its

---

[17] *Roberson*, 2010 WL 2806257 at *1-5.

[18] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[19] *Jackson*, 443 U.S. at 318-19.

[20] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[21] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

inquiry by reference to the elements of the crime as set forth in state law.[22]  This Court must also

be ever mindful of the deference owed to the trier of fact and the sharply limited nature of

constitutional sufficiency review.[23]  A fundamental principle of our federal system is "that a state

court's interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus."[24]  A determination of state law by a

state intermediate appellate court is also binding in a federal habeas action.[25]  This is especially

true where the highest court in the state has denied review of the lower court's decision.[26]

"[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited

to whether the error 'so infected the trial with unfairness as to make the resulting conviction a

denial of due process.'"[27]  "Federal courts hold no supervisory authority over state judicial

---

[22] *Jackson*, 443 U.S. at 324 n.16.

[23] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

[24] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[25] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[26] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland,* 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[27] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

proceedings and may intervene only to correct wrongs of constitutional dimension."[28]   It is through this lens that this Court must view an insufficiency of the evidence claim.

Roberson misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Where, as in this case, the question is one of credibility, the finding of the finder-of-fact carries the day.[29]   Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[30]   In this case, the California Court of Appeal determined that there was sufficient evidence of each element of the crime to support Roberson's conviction.  Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.[31]   Roberson bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous; a burden Roberson has failed to carry.[32]   The record does not compel the conclusion that no rational trier of fact could have found proof of guilt, especially considering the double deference owed under *Jackson* and AEDPA.

---

[28] *Smith v. Phillips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

[29] *See Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

[30] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[31] *See Jackson*, 443 U.S. at 326.

[32] 28 U.S.C. § 2254(e)(1).

2.  *Denial of New Trial*

Under California law, "[t]he determination of a motion for a new trial rests so completely

within the court's discretion that its action will not be disturbed unless a manifest and

unmistakable abuse of discretion appears."[33]   Likewise, the denial of a motion for a new trial

under Federal Rule of Criminal Procedure 33 is reviewed for an abuse of discretion.[34]   Although

the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional

violation,[35] the Supreme Court has never held that abuse of discretion is an appropriate basis for

granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has suggested

that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas

proceeding it is not.[36]

A petitioner may not transform a state-law issue into a federal one by simply asserting a

violation of due process.[37]   "[The Supreme Court has] long recognized that a mere error of state

law is not a denial of due process."[38]   "[A]bsent a specific constitutional violation, federal habeas

corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as

---

[33] *People v. Williams*, 756 P.2d 221, 251 (Cal. 1988), *abrogated on another ground in People v. Guiuan*, 957 P.2d 928, 929 (Cal. 1998).

[34] *United States v. Moses*, 496 F.3d 984, 987 (9th Cir. 2007).

[35] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[36] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing § 2254(d)(1))).

[37] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[38] *Swarthout v. Cooke*, 131 S. Ct. 860, 863 (2011) (internal quotation marks and citations omitted).

to make the resulting conviction a denial of due process.'"[39]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[40]  Roberson's claim that the trial court's denial of his motion for a new trial fails because it does not present a question of constitutional dimension.

3. *The Sentence*

In his first enumerated ground, that the trial court failed to exercise its independent judgment, Roberson states:  "I was given 25 years to life, but my co-defendant Mr. Sarente was given 6 months."  Roberson does not explain the relevance of this fact, assuming it to be fact,[41] to the ground he raises and the other facts asserted in support of that ground.  It is unclear whether Roberson is contending that the alleged disparity in the sentences violated a constitutional right, or that the sentence itself was excessive.  Irrespective of which theory Roberson is asserting, he does not prevail.

On appeal, Roberson contended that the trial Court erroneously denied his *Romero* motion.[42]  In rejecting that claim, the California Court of Appeal held:

> The court detailed [Roberson's] lengthy criminal record and denied the motion. The 35-year-old [Roberson's] criminal history includes convictions for first degree burglary, dissuading a witness, two convictions for resisting arrest, three convictions for spousal abuse, auto theft, providing false information to an officer,

---

[39] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[40] *Phillips*, 455 U.S. at 221 (citations omitted); *see also Sanchez-Llamas*, 548 U.S. at 345.

[41] Nothing in the record reflects the disposition of the charges brought against Roberson, if any, how the case was disposed of (plea or trial), or the sentence that was imposed upon Roberson.

[42] *People v. Superior Court* (*Romero*), 917 P.2d 628 (Cal. 1996).  The procedure under California law to have a prior strike dismissed in the interests of justice.

14

theft, possession of rock cocaine, juvenile adjudications for burglary and disturbing the peace, and four parole violations.  His strike priors were for burglary and dissuading a witness.  His current offense was committed while in prison.  The trial court did not abuse its discretion in determining that [Roberson] did not fall outside the spirit of the three strikes law.[43]

Although Roberson may have received a severe sentence and the Eighth Amendment prohibits sentences that are grossly disproportionate to the crime, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare."[44]  Balanced against the proportionality principle is the corollary principle that the determination of prison sentences is a legislative prerogative not within the province of the courts.[45]  The Ninth Circuit has held that "'only extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment."[46]  As the Supreme Court has noted, recidivism has long been recognized as a legitimate basis for increased punishment and is a serious public safety concern.[47]  Given Roberson's extensive criminal history, it cannot be said that Roberson's sentence was disproportionally harsh or excessive.  Nor, in the absence of anything in the record that reflects the basis for the significantly lesser sentence allegedly

---

[43] *Roberson*, 2010 WL 2806257 at *6.

[44] *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alterations and emphasis omitted).

[45] *Rummel v. Estelle*, 445 U.S. 263, 275-76 (1980).

[46]  *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir. 1994) (quoting *United States v. Bland,* 961 F.2d 123, 129 (9th Cir. 1992)).

[47] *Ewing v. California*, 538 U.S. 11, 26-27 (2003) (plurality); *see Rummel*, 445 U.S. at 284.

imposed on Roberson's co-defendant, can this Court find that the sentence imposed on Roberson was arbitrary and capricious.[48]

For the foregoing reasons, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[49]  Roberson is not entitled to relief under his first, second, or third grounds.

Ground 4:  Failure to Investigate Competence

Roberson contends that the trial court should have investigated his competence *sua sponte*.  In rejecting Roberson's arguments, the California Court of Appeal held:

## III

[Roberson] next contends that the trial court failed to initiate competency proceedings despite his "bizarre and irrational" behavior, noting that he refused to come to court on two occasions, and was heavily medicated and not able to proceed on one occasion.  [Roberson] also had hoarded pills, made alcohol in his cell, repeatedly threatened deputies, and inflicted injuries to himself.  We conclude that the foregoing conduct did not require the trial court to initiate competency proceedings.

Section 1367, subdivision (a) provides: "A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the

---

[48] *See Smith v. Mahoney*, 611 F.3d 978, 996 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 461 (2010) (a court is not required in a capital case to consider the fact that co-defendants did not receive the death penalty);  *Beardslee v. Woodford*, 358 F.3d 560, 580 (9th Cir. 2004) (holding in a capital case that different sentences for co-defendants who were not equally culpable did not violate the prohibition against the arbitrary imposition of the death penalty).

[49] 28 U.S.C. § 2254(d).

criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

Section 1368, subdivision (a) provides, in relevant part, as follows: "If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent."

Due process bars the trial or conviction of a mentally incompetent defendant. (*People v. Rogers* (2006) 39 Cal.4th 826, 846 (*Rogers* ).)   A trial judge must "suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial. [Citations.]  The court's duty to conduct a competency hearing may arise at any time prior to judgment. [Citations.]  Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations. [Citations.]" (*Id.* at p. 847.)

Here, the trial court did not express a doubt as to [Roberson's] competence to stand trial.   Neither did defense counsel.   The evidence relied upon does not constitute substantial evidence to raise a doubt to require the trial court to initiate competency proceedings.   [Roberson's] threatening behavior at and during trial led to his restraint.   He had been a discipline problem at the jail and received no good time/work time credits at sentencing.   The trial court had the opportunity to observe [Roberson] during the entire trial.   The evidence of [Roberson's] competence is apparent in his testimony at trial.   We find no error.   (*Rogers, supra,* 39 Cal.4th at p. 847.)[50]

Under California law, a defendant is presumed to be "mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally competent."[51]   The Supreme Court has upheld the constitutionality of this provision.[52]   Competence to stand trial requires that a defendant have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual

---

[50] *Roberson*, 2010 WL 2806257 at *5.

[51] Cal. Penal Code § 1369(f).

[52] *Medina v. California*, 505 U.S. 437, 452 (1992).

17

understanding of the proceedings against him."[53]  A defendant's constitutional right to due process is violated if his or her competency to stand trial was at issue and he or she did not receive an adequate competency hearing.[54]

"A court must order a [competency] hearing *sua sponte* if the evidence before it raises a 'bona fide doubt' as to whether the defendant has become incompetent."[55]  "The test for such a bona fide doubt is 'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.'"[56]  The Supreme Court has identified three factors relevant to whether there is reason for a trial judge to doubt a defendant's competency:  prior medical opinions about competency; evidence of irrational behavior by the defendant; and the defendant's demeanor at trial.[57]  In a habeas proceeding, this Court examines only the information that was before the state court.[58]  The state court "findings that the evidence did not require a competency hearing under *Pate* are findings of fact to which this Court must defer unless they are 'unreasonable' within the meaning of 28 U.S.C. § 2254(d)."[59]  In this case, neither the trial judge nor Roberson's attorney expressed any concern about Roberson's competency.

---

[53] *See Dusky v. United States*, 362 U.S. 402 (1960) (per curiam).

[54] *Pate v. Robinson*, 383 U.S. 375, 385 (1986).

[55] *United States v. White*, 670 F.3d 1077, 1082 (9th Cir. 2012) (citing *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010)).

[56] *Id.* (quoting *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc)).

[57] *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

[58] *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 489 (9th Cir. 1997).

[59] *Mendez v. Knowles*, 556 F.3d 757, 771 (9th Cir. 2009) (quoting *Torres v. Prunty*, 223 F.3d 1103, 1105 (9th Cir. 2000)).

Applying these principles to the record before it, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[60]  Roberson is not entitled to relief under his fourth ground.

## V.  CONCLUSION AND ORDER

Roberson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[61]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[62]

The Clerk of the Court is to enter judgment accordingly.

Dated: August 2, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[60] 28 U.S.C. § 2254(d).

[61] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[62] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.